SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
DENISE GIRAUDO, Cal Bar No. 254737
2099 Pennsylvania Avenue NW, Suite 100
Washington, D.C. 20006
Telephone: 202.747-1900
Facsimile: 202.747-1901
Email: dgiraudo@sheppard.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
CARLO VAN DEN BOSCH, Cal Bar No. 185207
DARIAN NOURIAN, Cal Bar No. 359723
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
Telephone: 714.513-5100
Facsimile: 714.513.5130
Email: cvandenbosch@sheppard.com
dnourian@sheppard.com

Attorneys for Plaintiffs Artivo Surfaces, LLC and Galleher LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ARTIVO SURFACES, LLC and GALLEHER LLC

Plaintiffs,

v.

SCOTT BERTRAM, HF DESIGN, LLC; and DOES 1 through 10, inclusive,

Defendants.

CASE NO.: 3:26-cv-10940

**COMPLAINT FOR:**

1. **TRADE SECRETS MISAPPROPRIATION (18 U.S.C. § 1836)**
2. **TRADE SECRETS MISAPPROPRIATION (CAL. CIV. CODE §3426)**
3. **UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.]**
4. **CONVERSION**
5. **INTENTIONAL INTERFERENCE WITH AN ECONOMIC ADVANTAGE**
6. **BREACH OF THE FIDUCIARY DUTY OF LOYALTY**
7. **CIVIL CONSPIRACY**
8. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**
9. **UNFAIR COMPETITION (15 U.S.C. § 1125 (a))**

**10. TRADEMARK INFRINGEMENT [CALIFORNIA COMMON LAW]**
**11. PROMISSORY ESTOPPEL**
**12. UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Artivo Surfaces, LLC ("Artivo") and Galleher LLC ("GalleherDuffy") (collectively, "Plaintiffs") for their Complaint against Defendants Scott Bertram, HF Design, LLC ("HF Design"), and DOES 1-10 (collectively, "Defendants") allege as follows:

1. This case arises from Defendants' deliberate and coordinated campaign to misappropriate trade secrets, intellectual property, and customer goodwill of Plaintiffs Artivo and GalleherDuffy, which was carried out with full knowledge of Plaintiffs' rights.

2. Defendant HF Design — who previously had a business relationship with GalleherDuffy — orchestrated a scheme to misappropriate Plaintiffs' trade secrets and customer relationships by recruiting Scott Bertram, GalleherDuffy's former Director of Sales for Northern California, who, on information and belief, misappropriated Plaintiffs' confidential trade secrets — including proprietary sales data, customer account information, and display placement reports — immediately prior to his resignation from GalleherDuffy and his subsequent employment with HF Design. Armed with Plaintiffs' stolen trade secrets, Defendants executed a coordinated campaign to divert Plaintiffs' customers and business to Tri-West, LTD ("Tri-West"), a competing wholesale flooring distributor.

3. To further execute this scheme, on information and belief, Defendant HF Design conspired with Tri-West to strip Plaintiffs of their protected Palacio Americano Grande and Palacio Amora flooring collections — collections that Plaintiffs created, named, branded, and built into a recognized product line under their federally registered PALACIO® trademark — and to transfer those collections, along with Plaintiffs' customer relationships, to Tri-West virtually overnight.

4. In March 2026, on information and belief, Tri-West, with Defendants fully aware of the forthcoming campaign, launched a coordinated and misleading e-blast to Plaintiffs' own customers, falsely announcing that Tri-West had "officially secured exclusive distribution rights" for the Americano Grande and Amora collections — collections that belong to Plaintiffs — and falsely characterizing those collections as having been part of HF Design's separate Azur Grande brand. Tri-West made these false representations, acting in concert with Defendants, without any

legitimate right to use Plaintiffs' marks or collection names, and with full knowledge that those names were the exclusive intellectual property of Plaintiffs.

5. Defendants' conduct has caused, and continues to cause, significant and irreparable harm to Plaintiffs, including lost sales and customer relationships, damage to the goodwill and reputation of the PALACIO Mark and its associated collections, and the ongoing unauthorized exploitation of Plaintiffs' confidential trade secrets and proprietary intellectual property.

6. This action seeks to address the significant harm Defendants have inflicted upon Plaintiffs: to recover monetary damages resulting from Defendants' misappropriation of Plaintiffs' trade secrets and willful trademark infringement; to permanently enjoin Defendants from any further use or disclosure of Plaintiffs' trade secrets and from further infringing Artivo's federally registered PALACIO Mark and associated collection names; to obtain disgorgement of any profits derived from Defendants' unlawful conduct; and to correct the damage to Plaintiffs' goodwill and business reputation caused by Defendants' past and continuing conduct.

## THE PARTIES

7. Artivo Surfaces, LLC is a Delaware limited liability company with its principal place of business at 2485 Courage Drive, Suite 100, Fairfield, California 94533.

8. Galleher LLC is a Delaware limited liability company with its principal place of business at 1741 Junction Avenue, San Jose, California 95112.

9. On information and belief, Scott Bertram is a resident of the state of California.

10. On information and belief, HF Design, LLC is a New York limited liability company with its principal place of business at 14 E. 33rd Street, Floor 8, New York, NY 10016.

11. Plaintiffs are unaware at this time of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by these fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint to allege their true names and capacities when the same have been ascertained, or, at the time of trial.

12. On information and belief, at all times herein mentioned, each of the Defendants was the agent, servant, or employee of each of the other Defendants, and in doing the things

alleged in this Complaint, was acting in the course and scope of such agency, service, and employment, and with the permission and consent of his, her or its co-Defendants.

**NATURE AND STATUTORY BASIS OF THE ACTION**

13. This action seeks remedy for: misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. (First Cause of Action); misappropriation of trade secrets under the California Uniform Trade Secrets Act, California Civil Code § 3426, et seq. (Second Cause of Action); unfair competition under the California Business and Professions Code, §§ 17200 et seq. (Third Cause of Action); conversion under California common law (Fourth Cause of Action); intentional interference with prospective economic advantage under California common law (Fifth Cause of Action); breach of the fiduciary duty of loyalty (Sixth Cause of Action); civil conspiracy under California common law (Seventh Cause of Action); trademark infringement under the federal Lanham Act, 15 U.S.C. § 1114(1) (Eighth Cause of Action); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Ninth Cause of Action); trademark infringement under the common law of California (Tenth Cause of Action); promissory estoppel (Eleventh Cause of Action); and unjust enrichment (Twelfth Cause of Action).

**JURISDICTION AND VENUE**

14. This matter involves claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, et seq, and the Lanham Act, 15 U.S.C. sections 1114 and 1125(a) et seq. This Court possesses subject matter jurisdiction under 28 U.S.C. sections 1331 and 1338, and 15 U.S.C. section 1121, as portions of Artivo's claims fall under the DTSA and Lanham Act.

15. This Court has supplemental jurisdiction over Artivo's California statutory and common law claims pursuant to 28 U.S.C. § 1367(a) in that those claims arise out of a common nucleus of operative facts as the DTSA and Lanham Act claims, and the Court's exercise of jurisdiction over the state law claims will promote judicial economy, convenience, and fairness to the parties.

16. This Court has personal jurisdiction over Scott Bertram because he resides in California and committed the alleged acts in this District.

17. Defendant HF Design purposefully directed the conduct giving rise to Plaintiffs' claims into California, and into this judicial district. On information and belief, HF Design has (i) conducted business operations in California, including contacts with California-based distributors and prospective customers; (ii) maintained continuous and ongoing business contacts with California residents; (iii) intentionally engaged in trademark infringement and unfair competition with knowledge of Artivo's senior trademark rights and with conduct targeted at Artivo in California, thereby causing harm in California; and/or (iv) purposefully availed itself of the privilege of conducting business in California.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that, on information and belief, Defendants conduct business in this district, and a substantial part of the acts or omissions giving rise to the claims asserted herein occurred and/or had effects in this district.

## FACTUAL BACKGROUND

### A. Artivo's History, Business and Valuable Intellectual Property

19. Artivo is a powerhouse in the flooring and tile industry. GalleherDuffy and B.R. Funsten & Company d/b/a Tom Duffy Company ("B.R. Funsten") are wholly-owned subsidiaries of Artivo. Artivo was formed in October 2024 when it became the parent company to GalleherDuffy and Virginia Tile, both market-leading distributors. Around that same time, Artivo acquired distributor B.R. Funsten to become the number one flooring distributor by revenue.

20. Artivo is the exclusive owner of the federally registered trademark **Palacio®**, U.S. Registration No. 4802815, covering hardwood flooring, and related products (the "PALACIO Mark"). *See* U.S. Reg. No. 4,802,815, attached hereto as Exhibit A (the "PALACIO Registration").

21. The PALACIO Mark was originally owned and used by Artivo's predecessor-in-interest B.R. Funsten. Artivo and its predecessors-in-interest, including B.R. Funsten and GalleherDuffy, have commercially used the distinctive PALACIO Mark in connection with their flooring products since at least as early as September 1, 2015, and have developed substantial goodwill and recognition for the Mark throughout the flooring industry.

22. Among other efforts to secure and protect its intellectual property interests, Artivo's predecessor-in-interest B.R. Funsten obtained the PALACIO Registration on September 1, 2015. The PALACIO Registration constitutes prima facie evidence that the Mark is valid and that Artivo is entitled to the exclusive use of the Mark in commerce throughout the United States on the goods listed on the registration, including hardwood flooring and related products.

23. On November 6, 2020, B.R. Funsten filed a Section 15 declaration of incontestability for the PALACIO Registration with the United States Patent and Trademark Office ("USPTO"), attached hereto as Exhibit B. On February 17, 2021, the USPTO issued an Official Notice of Acknowledgement, attached hereto as Exhibit C, confirming that the Section 15 declaration met the requirements of Section 15 of the Trademark Act, 15 U.S.C. § 1065, and was duly acknowledged. As a result, the PALACIO Registration is incontestable under 15 U.S.C. § 1065, and constitutes conclusive evidence of Artivo's exclusive right to use the PALACIO Mark in commerce in connection with the goods covered by the registration.

24. On October 21, 2024, B.R. Funsten assigned the PALACIO Mark and registration to GalleherDuffy. *See* Nunc Pro Tunc Intellectual Property Assignment attached hereto as Exhibit D. This assignment has been submitted for recordation with the USPTO.

25. On April 27, 2026, GalleherDuffy assigned the PALACIO Mark to Artivo Surfaces, LLC, vesting in Artivo all rights, title, and interest in and to the PALACIO Registration. *See* Intellectual Property Assignment attached hereto as Exhibit E. This assignment was likewise recorded with the USPTO on April 28, 2026. Artivo now exclusively owns the PALACIO Registration.

26. Artivo markets and sells a variety of distinct flooring collections under the PALACIO umbrella, each of which is displayed through independent product displays that it provides to retailers. Among those collections are Americano Grande, a waterproof flooring collection, and Amora, a wood flooring collection. The names "Americano Grande" and "Amora" were conceived and created by GalleherDuffy, Artivo's predecessor-in-interest. GalleherDuffy's marketing team designed the displays and branding for each of these collections. The displays and sample panels for each collection prominently bear the Palacio logo.

27. The PALACIO Mark is strong and distinctive when used in connection with Plaintiffs' products. As a result of Artivo's exclusive and continuous use of the PALACIO Mark, the Mark has come to distinguish Plaintiffs' products from those offered by others in the marketplace.

28. As a company that depends both upon the quality of its products and the reliability of its brand, Artivo and its predecessors in interest have spent substantial sums securing and protecting their intellectual property interests in the PALACIO Mark.

29. The PALACIO Registration constitutes prima facie evidence that the Mark is valid and that Artivo is entitled to the exclusive use of the Mark in commerce throughout the United States on the goods listed on the registration, including hardwood flooring and related products.

30. Since the launch of the PALACIO collections, Artivo and its predecessors in interest have continuously advertised the Palacio Americano Grande and Palacio Amora collections to the public under the PALACIO Mark on at least two publicly accessible websites: themissioncollection.com and GalleherDuffy.com. Artivo and its predecessors in interest have also printed and distributed branded brochures for these collections to customers, which are also downloadable from themissioncollection.com.

31. Since adopting and promoting the PALACIO Mark and its associated Americano Grande and Amora collections, Artivo and its predecessors in interest have expended substantial time, effort, and money to ensure that the relevant public associates the PALACIO Mark and its collections with products originating from Plaintiffs. As a result of this investment, Artivo and its predecessors in interest have built a strong reputation for quality, performance, and design versatility in the marketplace for the Palacio Americano Grande and Amora collections.

32. Artivo enjoys substantial demand and goodwill for their flooring products marketed under the PALACIO Mark and its associated collections. Accordingly, the PALACIO Mark, and the collection names Americano Grande and Amora, are significant assets of Plaintiffs' business.

33. By virtue of Artivo's and its predecessors in interests' extensive use of the PALACIO Mark and the sums spent to promote the Mark and its associated collections, the PALACIO Mark has acquired secondary meaning in the minds of the relevant public, who have

come to associate the Mark with products originating from Plaintiffs. Accordingly, Artivo holds extensive rights, either through registration or common law, in the PALACIO Mark and associated collection names.

**B. Defendant HF Design's Willful Disregard of Artivo's Trademark Rights**

34. Defendant HF Design is a flooring importer and private-label supplier. Alex Shaoulpour serves as HF Design's President, and Jeff Garber serves as its Vice President of Sales and Marketing.

35. Tri-West is a wholesale flooring distributor that competes with Plaintiffs. Dan Proctor serves as Tri-West's President and CEO.

36. HF Design previously worked with GalleherDuffy, supplying the flooring products that GalleherDuffy sub-private-labeled and marketed under the PALACIO Mark as the Americano Grande and Amora collections, in addition to a separate HF Design-branded line known as Azur Grande.

37. On March 24, 2026, Mr. Shaoulpour and Mr. Garber of HF Design appeared in person at GalleherDuffy's San Jose location to meet with GalleherDuffy's President, Rick Coates, and Vice President, Danny Harrington. At that meeting, HF Design announced its intention to sever its relationship with GalleherDuffy and move the Palacio Americano Grande, Palacio Amora, and Azur Grande product lines to a competing distributor. HF Design presented GalleherDuffy with a detailed legal agreement requiring GalleherDuffy to (i) sell back its remaining inventory to HF Design at partial value, (ii) assign its intellectual property rights in the Palacio-branded collections to HF Design, and (iii) refrain from removing GalleherDuffy's existing displays for the Palacio-branded collections from retailers' premises. HF Design disclosed that it had been working on this plan "for a couple of months."

38. GalleherDuffy declined the proposed agreement, and emphatically stated that it was not willing to sign over its intellectual property rights. Mr. Harrington proposed an alternative arrangement under which the parties would continue working together on the Palacio-branded product lines under modified payment terms.

39. On March 25, 2026, during a follow-up call with Mr. Shaoulpour and Mr. Garber, GalleherDuffy reiterated that it would retain its Palacio-branded products and associated intellectual property rights, and was willing only to sell back inventory of the HF-branded Azur Grande line. HF Design informed GalleherDuffy that it was not interested in GalleherDuffy's proposal to continue working together under modified terms.

40. On March 26, 2026, during a further call among Mr. Harrington, Mr. Coates, Mr. Shaoulpour, and Mr. Garber, HF Design confirmed that it had decided to move all three product lines — Americano Grande, Amora, and Azur Grande — to Tri-West. HF Design and Tri-West's plan, as disclosed on that call, included: (i) a meeting on March 27, 2026 to announce the transition to Tri-West's sales team; and (ii) an effort to obtain retailers' permission to relabel GalleherDuffy's Palacio-branded displays. Mr. Garber acknowledged that Tri-West intended to continue using the Americano Grande and Amora collection names — names that had been conceived and created entirely by GalleherDuffy. Mr. Harrington explicitly cautioned HF Design that failure to respect Plaintiffs' trademark rights would compel legal action.

41. Later that same day, Mr. Garber sent a written email to Artivo's Mr. Harrington and Mr. Coates confirming that HF Design and Tri-West were moving forward with their plan, that Tri-West would make the announcement to its sales team on March 27, 2026, and that Tri-West intended to have retailers rebrand GalleherDuffy's Palacio displays.

42. On March 27, 2026 and on information and belief, in a highly coordinated and pre-planned campaign, Tri-West — aided and abetted by Defendant HF Design — launched an immediate and aggressive outreach effort directed at GalleherDuffy's existing customers. By 9:30 a.m. on March 27, 2026, members of GalleherDuffy's sales team had already begun receiving forwarded texts and emails from confused customers who had been contacted by Tri-West's sales representatives, and who were told that Tri-West was now taking over GalleherDuffy's product lines and that they should order accordingly.

43. This outreach took multiple forms. Among the infringing communications disseminated on March 27, 2026, was a formal e-blast from Tri-West announcing that "Tri-West Ltd has officially secured exclusive distribution rights for the Azur Grande Engineered Collection,

including products previously known as the Americano Grande and Amora Collections, effective immediately."

44. This e-blast was false and misleading in multiple respects. First, it falsely characterized the Palacio Americano Grande and Palacio Amora collections as having been part of HF Design's Azur Grande Collection. These collections had no association with the Azur Grande brand whatsoever, other than the fact that GalleherDuffy was the distributor for both lines. Second, the e-blast referred to GalleherDuffy's proprietary collection names — Americano Grande and Amora — without authorization. Third, it falsely states that the products were "previously known" as Americano Grande and Amora, even though they are still marketed and sold under those names. Finally, the e-blast promoted those collections as having "already built a strong reputation in the market, known for their quality, performance, and design versatility" — a reputation built entirely by Artivo and GalleherDuffy through their own substantial investment of time, effort, and resources.

45. The e-blast was not the only false and misleading communication Tri-West directed at GalleherDuffy's customers on March 27, 2026. In another email from a Tri-West representative to customers on or about the same date, Tri-West falsely stated that Tri-West, LTD "is now the official distributor" for the "line currently known as Palacio Amora Hardwood." The email also falsely stated that the "manufacturer ha[d] made a strategic partnership change." HF Design is not the manufacturer of the product, which is in fact made by Vietnam H&M Wood Co., Ltd., who has informed GalleherDuffy that it had no involvement in HF's or Tri-West's plans for the product's distribution.

46. Tri-West's campaign of false and misleading representations — aided and abetted by Defendant HF Design — did not end on March 27. In a form letter Tri-West provided to its representatives for circulation on or about March 30, 2026, Tri-West falsely stated that (i) it would be the new distributor for the hardwood collections currently known as Azur Grande, as well as the products "formerly known as" Americano Grande and Palacio Amora, and (ii) the products "formerly known as" Americano Grande and Palacio Amora would be transitioning to new labeling.

47. The customer confusion generated by Tri-West's communications was immediate and widespread. As just one example, a representative of one of the largest homebuilders in the United States contacted GalleherDuffy to ask whether "any other products [were] transitioning over to different suppliers?" In another example, a Tri-West sales representative solicited business from one of GalleherDuffy's customers by directing that customer to GalleherDuffy's website and representing that Tri-West is the "new distributor" for these products.

48. The falsity of Tri-West's claimed distributor status was confirmed by HF Design's own principal. HF Design's Mr. Garber told Artivo's Mr. Harrington that he was "absolutely correct" in stating that Tri-West was "most definitely not officially the new distributor of Amora and Americano Grande."

49. Neither Defendant HF Design nor Tri-West has ever been authorized by Artivo or GalleherDuffy to use the PALACIO Mark, the Americano Grande collection name, the Amora collection name, or any other mark or designation confusingly similar to Plaintiffs' marks, and Defendant HF Design has have never been granted authority to assert or suggest any affiliation with or endorsement by Artivo or GalleherDuffy, nor did it authorize Tri-West to do so.

50. As a result of Tri-West's use of Plaintiffs' marks and collection names in connection with competing flooring products, customers and distributors who encountered Tri-West's communications were confused as to the source, affiliation, sponsorship, or endorsement of those products, and as to whether the products being offered by Tri-West were those of GalleherDuffy.

51. On information and belief, Tri-West, acting in concert with Defendant HF Design, willfully adopted and used Plaintiffs' marks and collection names with clear knowledge of Artivo's ownership of the PALACIO Mark and with full awareness that Plaintiffs had created, used, and extensively promoted the Americano Grande and Amora collections under the PALACIO brand.

52. On March 31, 2026, Plaintiffs' counsel sent a cease and desist letter to Defendant HF Design and Tri-West, placing them on formal notice of Artivo's trademark rights and demanding that they immediately and permanently cease all use of the PALACIO Mark and the

Americano Grande and Amora collection names. Following Plaintiffs' letter, Tri-West eventually sent a corrective message; however, the damage had already been done.

53. Tri-West's use of Plaintiffs' marks in connection with competing and related flooring products, acting in concert with Defendant HF Design, constitutes willful infringement that has damaged Plaintiffs.

54. On information and belief, Tri-West, acting in concert with Defendant HF Design, have begun selling rebranded PALACIO Americano Grande and Amora collections under the names "Pacifico Grande" and "Pavilion Manor" respectively.

55. On information and belief, at the time these announcements were made, Tri-West, acting in concert with Defendant HF Design, purposely priced their products just below that of Plaintiff so as to undercut Plaintiffs and confuse consumers that they are getting the same product at a lesser price. Plaintiff has since had to discount its pricing substantially in order to sell the substantial inventory that it had on hand at the time of the announcement.

**C. Defendants' Misappropriation of Plaintiffs' Trade Secrets**

56. On information and belief, Defendants' unlawful conduct was facilitated by HF Design's recruitment of GalleherDuffy's former Director of Sales and their misappropriation of Plaintiffs' confidential trade secrets, which together enabled Defendants, acting in concert with Tri-West, to execute their coordinated campaign.

57. Scott Bertram served as GalleherDuffy's Director of Sales for Northern California. In that capacity, Mr. Bertram had access to Plaintiffs' confidential and proprietary business information, including, but not limited to, product pricing catalogs, revenue calculation workbooks, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory, pricing and margin information, and related commercially sensitive data (collectively, the "Trade Secrets"). Plaintiffs' Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by competitors, and Plaintiffs maintained these Trade Secrets through reasonable security measures, including access controls on their internal systems.

58. On information and belief, on January 21, 2026, HF Design informed Mr. Bertram of their intention to sever its relationship with GalleherDuffy and move the Palacio Americano Grande, Palacio Amora, and Azur Grande product lines to a competing distributor.

59. On January 21, 2026, Mr. Bertram accessed and downloaded a substantial volume of sales data and internal reports, including product pricing catalogs, revenue calculation workbooks, inventory data, and reports reflecting the placements of Palacio and HF-branded displays in the field. Among those documents was an account list of a GalleherDuffy collection which competes directly with Palacio Amora, in an apparent attempt to target that collection's customers. Plaintiffs had undertaken significant efforts to maintain the secrecy of this information, including, but not limited to, password protection and access to only a select few with a "need to know". This information which amounted to trade secrets was known to be of particular value to a competitor seeking to identify and target GalleherDuffy's customer base and retail footprint. That same day, Mr. Bertram sent a text message to GalleherDuffy's President, Rick Coates, requesting a call.

60. On January 22, 2026, Mr. Bertram called Mr. Coates and informed him of his intent to resign from GalleherDuffy. Mr. Bertram formally submitted his letter of resignation to GalleherDuffy's Human Resources department on January 23, 2026. His last day of employment with GalleherDuffy was February 20, 2026.

61. Shortly after his departure, HF Design hired Mr. Bertram.

62. HF Design disclosed at the March 24, 2026 meeting that it had been working on its plan to move the Palacio product lines to Tri-West "for a couple of months." This timeline coincides almost precisely with the period in which Mr. Bertram first signaled his intent to leave GalleherDuffy in January 2026, and with his access to and extraction of Plaintiffs' confidential sales and display placement data on January 21, 2026.

63. On information and belief, in the week prior to Tri-West's March 27, 2026 launch announcement, Mr. Bertram was calling on flooring distributors in Texas and promoting product lines substantially similar to GalleherDuffy's Palacio Americano Grande collection. GalleherDuffy's sales team in Texas was under the reasonable belief that what Mr. Bertram was

promoting was GalleherDuffy’s own Americano Grande product line. When GalleherDuffy's leadership confronted HF Design about this conduct, HF Design asserted that Mr. Bertram was promoting only “similar” products.

64. On information and belief, Mr. Bertram was present at the Tri-West sales meeting held on the morning of March 27, 2026, at which Tri-West announced to its internal sales team that it was taking over the Palacio Americano Grande and Amora product lines from GalleherDuffy.

65. On information and belief, Mr. Bertram misappropriated Plaintiffs’ confidential Trade Secrets — including sales data, customer and account information, pricing information, and display placement reports — prior to or upon his departure from GalleherDuffy, and provided that information to HF Design, which in turn acted in concert with Tri-West, to facilitate their coordinated campaign to divert GalleherDuffy’s customers and to usurp Plaintiffs' Palacio product lines and associated goodwill. Meanwhile, Defendant HF Design knew or should have known that Mr. Bertram obtained Plaintiffs’ trade secrets by improper means, yet still used Plaintiffs’ Trade Secrets, together with Tri-West, to facilitate their campaign to harm Plaintiffs.

66. Defendant HF Design’s acquisition and use of Plaintiffs’ Trade Secrets constitutes misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and applicable state law, and has caused, and continues to cause, substantial harm to Plaintiffs.

**D. HF Design’s Conversion Of GalleherDuffy’s Inventory**

67. GalleherDuffy purchased three shipping containers worth of material from HF Design valued at $281,000 (“Inventory”). GalleherDuffy paid for this Inventory in full.

68. On information and belief, the Inventory is or was for a period sitting in a port warehouse under HF Design’s control. HF Design has refused to release or deliver the Inventory to GalleherDuffy, thus depriving GalleherDuffy of its right of ownership over the Inventory.

**E. GalleherDuffy’s Detrimental Reliance on HF Design’s Representations and HF Design’s Unjust Retention of Benefits**

69. In reliance on HF Design’s representations that the parties’ business relationship would continue and expand following GalleherDuffy's merger with B.R. Funsten, GalleherDuffy

made substantial investments in displays, samples, and merchandising materials for HF Design's product lines, including the Azur Grande, Americano Grande, and Amora product lines — the very product lines that HF Design thereafter transferred to Tri-West.

70. HF Design's representations that the partnership would continue and expand were made both expressly and by conduct. For example, on or about December 24, 2025, HF Design's representative transmitted samples of new product items to GalleherDuffy for review and evaluation, in furtherance of a proposed expansion of the parties' relationship.

71. Thereafter, at a trade show in or about January 2026 — just weeks before HF Design abruptly terminated the relationship — HF Design's representatives met with GalleherDuffy's team, presented those same new product items, and represented that HF Design sought to expand its partnership with GalleherDuffy.

72. At no point during these communications did HF Design disclose any intention to terminate the parties' relationship or to transfer GalleherDuffy's product lines to a competing distributor. To the contrary, HF Design's representations — both express and by conduct — reasonably led GalleherDuffy to believe that the relationship was stable and poised for growth.

73. HF Design knew, or reasonably should have expected, that GalleherDuffy would rely on its representations and continue to invest in merchandising and infrastructure in support of the HF Design product lines.

74. GalleherDuffy reasonably and justifiably relied on HF Design's representations to its detriment. As a direct result of that reliance, GalleherDuffy has suffered substantial and ongoing damages.

75. HF Design has been unjustly enriched by retaining the benefit of GalleherDuffy's investments in displays, samples, and merchandising while simultaneously transferring the subject product lines to Tri-West and depriving GalleherDuffy of the benefit of those investments.

**FIRST CAUSE OF ACTION**

**Trade Secrets Misappropriation**

**Under the Defend Trade Secrets Act 18 U.S.C. § 1836 et seq.**

76. Plaintiffs incorporate by reference the allegations set forth above.

77. In connection with the development and conduct of its business, Plaintiffs have expended substantial time, labor, and money to research and develop product pricing, revenue calculation, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory, pricing and margin information, and related commercially sensitive data. These documents and information have significant actual and potential independent economic value.

78. Plaintiffs have taken substantial measures and exercised due diligence to prevent their business-related documents and information from becoming available to persons other than those selected by them to have access to these documents and this information in order to further its business. These measures include the use of IT security measures such as password protection, limited access to select individuals who needed to know the information in furtherance of their job responsibilities, and a policy requiring employees to acknowledge and adhere to Plaintiffs' employee handbook and confidentiality policy.

79. By virtue of his position, Mr. Bertram was provided access to Plaintiffs' trade secret information in the performance of his role, including, but not limited to information regarding product pricing, revenue calculation workbooks, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory, pricing and margin information, and other trade secret information.

80. On information and belief, prior to leaving his employment with GalleherDuffy, in particular on the day before he communicated his intention to leave his employment with GalleherDuffy, Mr. Bertram acquired Plaintiffs' Trade Secrets through improper means by downloading and providing Plaintiffs' Trade Secrets to Defendant HF Design, which in turn acted in concert with Tri-West, without the authorization or consent of Plaintiffs' in violation of the terms of Plaintiffs' policies. This information included information regarding product pricing, revenue calculation workbooks, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory.

81. Defendant HF Design knew or should have known that Mr. Bertram acquired Plaintiffs' Trade Secrets by improper means.

82. On information and belief, Defendant HF Design further misappropriated Plaintiffs' Trade Secrets by conspiring with Tri-West to use the Trade Secrets to launch an aggressive outreach effort directed at GalleherDuffy's existing customers on March 27, 2026.

83. When Tri-West launched its aggressive outreach effort, acting in concert with Defendants, it did so with information obtained by virtue of Mr. Bertram's former position and access to GalleherDuffy's Trade Secrets.

84. Plaintiffs have at all times had a protectable business in its trade secret information, and have taken reasonable steps to protect the secrecy of this information.

85. Defendants have misappropriated Plaintiffs' Trade Secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

86. The misappropriation of Plaintiffs' Trade Secrets has and will proximately cause substantial damage to Plaintiffs including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

87. Unless Defendants are permanently enjoined from misusing, converting, disclosing, and misappropriating Plaintiffs' Trade Secrets, Plaintiffs will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

88. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief (i) prohibiting the use, possession, transfer, duplication and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information, and (ii) directing the return by Defendants of Plaintiffs' Trade Secrets.

89. In addition, Plaintiffs have also suffered and seek an award of actual and exemplary damages (in an amount to be determined at trial) as a result of Defendants' misappropriation of Plaintiffs' Trade Secrets.

**SECOND CAUSE OF ACTION**

**Trade Secrets Misappropriation**

**[California Civil Code § 3426 et seq.]**

90. Plaintiffs incorporate by reference the allegations set forth above.

91. In connection with the development and conduct of its business, Plaintiffs have expended substantial time, labor, and money to research and develop product pricing, revenue calculation, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory, pricing and margin information, and related commercially sensitive data. These documents and information have significant actual and potential independent economic value.

92. Plaintiffs have taken substantial measures and exercised due diligence to prevent their business-related documents and information from becoming available to persons other than those selected by them to have access to these documents and this information in order to further its business. These measures include the use of IT security measures such as password protection, document encryption, and a policy requiring employees to acknowledge and adhere to Plaintiffs' employee handbook and confidentiality policy.

93. By virtue of his position, Mr. Bertram was provided access to Plaintiffs' trade secret information in the performance of his role, including, but not limited to information regarding product pricing, revenue calculation workbooks, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory, pricing and margin information, and other trade secret information.

94. On information and belief, prior to leaving his employment with GalleherDuffy, in particular on the day before he left his employment with GalleherDuffy, Mr. Bertram acquired Plaintiffs' Trade Secrets through improper means by downloading and providing Plaintiffs' Trade Secrets to Defendant HF Design, without the authorization or consent of Plaintiffs' in violation of the terms of Plaintiffs' policies. This information included information regarding product pricing,

revenue calculation workbooks, inventory data, sales data, customer account information, reports detailing the placement of Palacio and HF-branded displays at retailer locations throughout the territory.

95. Defendants knew or should have known that Mr. Bertram acquired Plaintiffs' Trade Secrets by improper means.

96. On information and belief, Defendants further misappropriated Plaintiffs' Trade Secrets by conspiring with Tri-West to use the Trade Secrets to launch an aggressive outreach effort directed at GalleherDuffy's existing customers on March 27, 2026.

97. On information and belief, the aggressive outreach effort undertaken by Tri-West, acting in concert with Defendants, incorporated information obtained through Mr. Bertram's former position with, and access to, GalleherDuffy's trade secrets.

98. Plaintiffs have at all times had a protectable business in its trade secret information, and have taken reasonable steps to protect the secrecy of this information.

99. Defendants have misappropriated Plaintiffs' Trade Secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

100. The misappropriation of Plaintiffs' Trade Secrets has and will proximately cause substantial damage to Plaintiffs including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

101. In addition, Plaintiffs have also suffered and seek an award of actual and punitive damages (in an amount to be determined at trial) as a result of Defendants' misappropriation of Plaintiffs' Trade Secrets.

## THIRD CAUSE OF ACTION

### Unfair Competition Against Defendants

### [California Business & Professions Code §§ 17200 & 17500]

102. Plaintiffs incorporate by reference the allegations set forth above.

103. On information and belief, Defendants' unlawful conduct set forth herein has had a substantial effect on commerce, and constitutes unlawful, unfair, and fraudulent business practices in violation of Section 17200, *et seq.*, of the California Business and Professions Code.

104. On information and belief, Defendants willfully intended to trade on the strength, reputation, and goodwill of the PALACIO Mark by acting in concert with Tri-West's dissemination of false and misleading communications to Plaintiffs' customers — including a coordinated e-blast on March 27, 2026 — falsely representing that Tri-West had secured exclusive distribution rights to the Americano Grande and Amora collections and misattributing those collections to HF Design's Azur Grande brand. Neither Defendants nor Tri-West were ever authorized to use Plaintiffs' marks or collection names, and their conduct caused customer confusion as to the source and ownership of those collections, misappropriating the goodwill that Plaintiffs had built.

105. Defendants further engaged in unlawful and deceitful conduct by, on information and belief, conspiring to recruit GalleherDuffy's former Director of Sales, Scott Bertram, to misappropriate Plaintiffs' Trade Secrets — including proprietary sales data, customer account information, and display placement reports — and using that information to unfairly compete with Plaintiffs and divert their customers to Tri-West.

106. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered and will continue to suffer injury to their business, goodwill and property.

107. Plaintiffs have no adequate remedy at law. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts described herein, Plaintiffs will continue to suffer irreparable harm. Plaintiffs are thus entitled, pursuant to California Business and Professions Code §§ 17203 and 17535, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of unfair competition, as well as to restitution and disgorgement of Defendants' profits.

**FOURTH CAUSE OF ACTION**

**Conversion**

***By Plaintiff GalleherDuffy Against Defendant HF Design***

108. Plaintiffs incorporate by reference the allegations set forth above.

109. GalleherDuffy owns and has lawful right of possession to the Inventory.

110. HF Design has intentionally deprived GalleherDuffy of its property rights over the Inventory by refusing to release or deliver the Inventory to GalleherDuffy.

111. Plaintiffs have suffered economic damages as a result of Defendants' actions to deprive Plaintiffs of their right of ownership over the Inventory.

**FIFTH CAUSE OF ACTION**

**Intentional Interference with an Economic Advantage**

112. Plaintiffs incorporate by reference the allegations set forth above.

113. Plaintiffs maintain an economic relationship with their customers.

114. Defendants had knowledge of Plaintiffs' relationship with their customers.

115. Defendants intentionally interfered with Plaintiffs' economic relationships by coordinating and directing, and acting in concert with Tri-West on, a campaign that Tri-West executed on March 27, 2026, consisting of an aggressive outreach effort directed at GalleherDuffy's existing customers, utilizing customer account information and sales data misappropriated from GalleherDuffy by Defendant Bertram.

116. Defendants' coordinated conduct resulted in immediate disruption of Plaintiffs' relationship with their customers. As of the morning of March 27, 2026, members of GalleherDuffy's sales team received communications from their customers who had been contacted by Tri-West's sales representatives — at Defendants' direction — and who were told that Tri-West was now taking over GalleherDuffy's product lines and that they should order from Tri-West rather than GalleherDuffy.

117. As a result of Defendants' intentional interference with Plaintiffs' economic relationships with their customers, Plaintiffs have been damaged and harmed in an amount subject to proof at trial.

**SIXTH CAUSE OF ACTION**

**Breach of the Fiduciary Duty of Loyalty**

***By GalleherDuffy Against Defendant Scott Bertram***

118. Plaintiffs incorporates by reference the allegations set forth above.

119. In his capacity as an employee of GalleherDuffy, Defendant Scott Bertram owed GalleherDuffy a fiduciary duty of loyalty.

120. On information and belief, Mr. Bertram breached his fiduciary duty of loyalty during his employment with GalleherDuffy by conspiring with Defendant HF Design and Tri-West to download and transmit Plaintiffs' Trade Secrets without authorization on January 21, 2026.

121. On information and belief, Mr. Bertram further breached his fiduciary duty of loyalty during his employment by conspiring with Defendant HF Design and Tri-West in furtherance of a coordinated scheme to divert Plaintiffs' customers and retail relationships to Tri-West and otherwise harm and impede Plaintiffs' business operations.

122. Mr. Bertram's breaches have harmed and continue to harm GalleherDuffy.

123. Mr. Bertram has deprived GalleherDuffy of the value of its substantial investments in its trade secrets as well as relationships and goodwill with its clients.

124. Mr. Bertram's actions have caused GalleherDuffy to suffer continuing and irreparable harm, including by unlawfully interfering with and jeopardizing GalleherDuffy's client relationships, misappropriating GalleherDuffy's trade secrets, and harming GalleherDuffy's reputation and goodwill with its clients.

**SEVENTH CAUSE OF ACTION**

**Civil Conspiracy**

125. Plaintiffs incorporate by reference the allegations set forth above.

126. Defendants HF Design and Scott Bertram, together with Tri-West as a co-conspirator and beneficiary, are two or more persons who, on information and belief, combined, associated, agreed, mutually undertook, and/ or acted in concert together a common purpose and objective to misappropriate and misuse Plaintiffs' Trade Secrets — including proprietary sales

data, customer account information, and display placement — and to infringe Plaintiffs' rights in the PALACIO Mark and associated Americano Grande and Amora collection names, all in furtherance of a coordinated scheme to divert Plaintiffs' customers and retail relationships to Tri-West and otherwise harm and impede Plaintiffs' business operations.

127. On information and belief, Defendants HF Design and Bertram, together with Tri-West, acted as an enterprise in furtherance of their conspiracy.

128. As a result of Defendants' conspiracy and the unlawful acts done in furtherance thereof, Plaintiffs have been damaged and harmed in an amount subject to proof at trial.

## EIGHTH CAUSE OF ACTION

### Trademark Infringement

### Under the Lanham Act 15 U.S.C. § 1114

129. Plaintiffs incorporate by reference the allegations set forth above.

130. Defendants have infringed the federally registered PALACIO Mark by, among other things, acting in concert with Tri-West's use of Plaintiffs' PALACIO Mark and associated collection names — Americano Grande and Amora — in connection with the promotion, distribution, and sale of competing flooring products in interstate commerce. Plaintiffs have not granted Defendants or Tri-West permission or authority to use the registered PALACIO® Mark or the Americano Grande or Amora collection names.

131. Plaintiffs are informed and believe, and on that basis allege, that Tri-West's unauthorized promotion, distribution, and sale of flooring products using the PALACIO® Mark and the Americano Grande and Amora collection names, in concert with Defendants, has a substantial effect on interstate commerce, and has caused confusion and mistake among customers and the public, and is likely to continue to cause confusion and mistake, and to deceive the public into believing that the products and communications originating from Tri-West are associated with, sponsored by, or authorized by Plaintiffs.

132. Plaintiffs are informed and believe, and on that basis allege, that Defendants committed these acts of infringement, including by acting in concert with Tri-West, willfully and with full knowledge of Artivo's rights in the PALACIO Mark, with the intent to trade on

Plaintiffs' reputation and goodwill, to cause confusion and mistake, to deceive the public into believing that Defendants' and Tri-West's products and communications originate with, or are associated with and/or authorized by, Plaintiffs, and to cause injury to Plaintiffs.

133. As a direct and proximate result of Defendants' wrongful conduct, including the unauthorized use of the PALACIO Mark, Plaintiffs have been and will continue to be damaged.

134. Defendants' actions thus constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

135. Plaintiffs have no adequate remedy at law. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the PALACIO mark, Plaintiffs will continue to suffer irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of trademark infringement in violation of the Lanham Act.

136. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are also entitled to recover damages they have sustained and will sustain as a result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct. At present, Plaintiffs are unable to ascertain the full extent of their damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

137. Defendants' conduct was intentional and, Plaintiffs are therefore entitled to an award of treble damages against Defendants pursuant to 15 U.S.C. § 1117(a).

138. Defendants' willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, Plaintiffs are entitled to an award of attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### Unfair Competition (False or Misleading Descriptions and Representations)

### Under the Lanham Act 15 U.S.C. § 1125(a)

139. Plaintiffs incorporate by reference the allegations set forth above.

140. Defendants, including by acting in concert with Tri-West, have made false representations and false descriptions in connection with their goods in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's trademark for which Plaintiff has no adequate remedy at law.

141. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' trademark to Plaintiff's great and irreparable harm.

142. Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs, which have no adequate remedy at law. Plaintiff are entitled to a preliminary and permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of infringement.

143. As a result of Defendants' wrongful conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages. Plaintiffs are entitled to recover actual damages, Defendants' profits, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), and 1117 in an amount to be proven at trial.

## **TENTH CAUSE OF ACTION**

### **Common Law Trademark Infringement and Unfair Competition Against Defendants**

### **[California Common Law]**

144. Plaintiffs incorporate by reference the allegations set forth above.

145. Defendants' actions alleged herein, including their acting in concert with Tri-West, constitute infringement of Plaintiffs' common law rights in the PALACIO trademark and common law unfair competition.

146. Plaintiffs have been and will continue to be irreparably harmed by Defendants' infringing acts and unless Defendants are restrained from continuing their infringing acts, the harm to Plaintiffs will increase.

147. Defendants' infringement of Plaintiffs' rights is and has been willful.

148. Plaintiffs have no adequate remedy at law for Defendants' wrongful acts.

149. Plaintiffs also seek damages stemming from Defendants' willful conduct.

**ELEVENTH CAUSE OF ACTION**

**Promissory Estoppel**

***By Plaintiff GalleherDuffy Against Defendant HF Design***

150. Plaintiffs incorporate by reference the allegations set forth above.

151. HF Design made clear and unambiguous representations to GalleherDuffy — both expressly and by conduct — that the parties' business relationship would continue and expand following GalleherDuffy's merger with B.R. Funsten.

152. HF Design knew, or reasonably should have expected, that GalleherDuffy would rely on these representations and continue to invest in displays, samples, and merchandising materials in support of the HF Design product lines.

153. In reasonable and justifiable reliance on HF Design's representations, GalleherDuffy made substantial investments in displays, samples, and merchandising materials for HF Design's product lines, including investments specifically in the Azur Grande, Americano Grande, and Amora product lines.

154. Injustice can only be avoided by enforcement of HF Design's representations and awarding appropriate relief to GalleherDuffy.

**TWELFTH CAUSE OF ACTION**

**Unjust Enrichment**

***By Plaintiff GalleherDuffy Against Defendant HF Design***

155. Plaintiffs incorporate by reference the allegations set forth above.

156. GalleherDuffy conferred a substantial benefit upon HF Design by investing in displays, samples, and merchandising materials to promote and support HF Design's product lines, including investments specifically in the Azur Grande, Americano Grande, and Amora product lines.

157. HF Design had knowledge of the benefit conferred upon it by GalleherDuffy. HF Design was aware that GalleherDuffy was making these investments in direct reliance on HF Design's representations that the parties' relationship would continue and expand, and HF Design accepted the benefit of those investments throughout the parties' relationship.

158. HF Design has been unjustly enriched by retaining the benefit of GalleherDuffy's investments in displays, samples, and merchandising while simultaneously and without notice transferring the Azur Grande, Americano Grande, and Amora product lines to Tri-West, thereby depriving GalleherDuffy of any ability to recoup the benefit of its investments.

159. It would be inequitable and unjust to permit HF Design to retain the benefits conferred by GalleherDuffy's investments without compensating GalleherDuffy therefor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment and orders against Defendants, jointly and severally, as follows:

1. A permanent injunction prohibiting Defendants and all persons acting in concert with them from the use or disclosure of Plaintiffs' Trade Secrets.

2. A preliminary and permanent injunction prohibiting Defendants and all persons acting in concert with them from using any mark, name, logo, or designation confusingly similar to Plaintiff's trademark, including the Infringing Mark, in connection with any goods or services.

3. An order requiring Defendants to cease all advertising, promotion, packaging, signage, and online use of any confusingly similar marks, and to remove such material from all websites, social media, and physical locations.

4. An order requiring Defendants to file a sworn statement confirming compliance with the Court's injunction.

5. An award of Plaintiff's actual damages and Defendants' profits resulting from the infringement.

6. Treble damages for willful infringement as permitted by law.

7. Reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

8. Punitive and exemplary damages under applicable law.

9. Compensatory damages in an amount to be proven at trial.

10. Restitutionary damages in an amount to be proven at trial.

11. Costs of this suit.

12. Pre-judgment and post-judgment interest as allowed by law.

13. Such other and further relief as the Court deems just and proper.

Dated: September 25, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ Denise Giraudo_*

DENISE GIRAUDO
CARLO VAN DEN BOSCH
DARIAN NOURIAN
*Attorneys for Plaintiffs*
Artivo Surfaces, LLC and Galleher LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby submit this demand that this action be tried in front of a jury.

Dated: September 25, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Denise Giraudo*

DENISE GIRAUDO
CARLO VAN DEN BOSCH
DARIAN NOURIAN
*Attorneys for Plaintiffs*
Artivo Surfaces, LLC and Galleher LLC